IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | 4:03CR3170 |
| | ) | |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM** |
| vs. | ) | **AND ORDER** |
| | ) | |
| ALICE PEDROZA, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before me for initial review of the Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("§ 2255 motion") filed by the defendant, Alice Pedroza (filing 50).[1]  The motion will be denied.

Ms. Pedroza is a career drug offender.  She asserts that she suffers from schizophrenia.  (Filing 50 at CM/EFC page 4.)  She also asserts that her illness was not controlled at the time she entered her guilty plea.  (Id.)  As a result, she claims that she did not understand the charges or the potential sentence.  (Id.)

---

[1] Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts provides:

> The judge who receives the motion must promptly examine it.  If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party.  If the motion is not dismissed, the judge must order the United States attorney to file an answer, motion, or other response within a fixed time, or to take other action the judge may order.

I well remember Ms. Pedroza and the care with which her case was handled. While there is no doubt that during most of her life she has suffered from a serious mental illness, the files and records establish beyond question that she was competent at all stages of the relevant proceedings which ultimately resulted in her conviction and sentence.  I next explain why that is so.

## *I.  BACKGROUND*

Pedroza was indicted on December 18, 2003, and charged with participating in a methamphetamine conspiracy. (Filing 1.)  An arrest warrant was issued, and she first appeared before Magistrate Judge Piester on February 27, 2004.[2] (Filing 4.)  On March 5, 2004, appointed counsel moved for an evaluation of the defendant. (Filings 9 and 11.)  Judge Piester promptly remanded Pedroza to the custody of the Attorney General for a competency examination.  (Filing 13.)

On May 10, 2004, the evaluation was submitted to the court.  (Filing 14.) According to the evaluation, her speech was "logical, coherent, and relevant" and her thinking "organized[.]"   (Id. at 5)  She was fully oriented as to time, place, and person. (Id. at 6.)  Her test scores indicated that she was feigning the severity of her impairments. (Id. at 5.) The defendant reported abusing drugs such as marijuana and "glass." (Id. at 3.  )

There was no question, however, that the defendant was troubled.  Pedroza reported seeing and hearing things that were not present, and she reported having special powers. (Id. at 5-7.)  These delusional reports were consistent with her prior medical history.  (Id. at 4.)[3]  She also exhibited "considerable trouble" with attention

---

[2]She has remained in custody throughout these proceedings.

[3]The records also indicated that when medicated "she lost her delusions, her mood . . . improved, and she showed an understanding of her situation."   (Id.)

and concentration. (Id. at 6.) Pedroza's insight and judgment were "limited." (Id.) Her intellectual abilities were considered to be below average. (Id.)

The doctors at the Metropolitan Correctional Center in New York concluded that Pedroza was not competent to stand trial because she suffered from untreated schizophrenia, undifferentiated type. (Id. at 7-8.) In particular, the doctors stated:

1. Regarding the issue of Mental Disease or Defect, it is the opinion of the evaluator that Ms. Pedroza currently does present with a Mental Disease under the law, that being Schizophrenia, Undifferentiated Type. Ms. Pedroza does not present with a Mental Defect.

2. Regarding the issue of Competency to Stand Trial, it is the opinion of the evaluator that Ms. Pedroza currently does not possess a rational and factual understanding of the proceedings against her, does not have the capacity to assist legal counsel in her defense, nor can she rationally make decisions regarding legal strategy. Therefore, it is the opinion of the evaluator Ms. Pedroza is Not Competent to Stand Trial.

3. If in the wisdom of the Court, Ms. Pedroza is determined Not Competent to Stand Trial, it is recommended that Ms. Pedroza be sent away for restoration to competency, pursuant to Title 18, U.S.C., Section 4241d.

(Id. at 8.)

Based upon the report, Judge Piester determined on June 11, 2004, that the defendant was not competent to stand trial. (Filing 17.) Judge Piester ordered that she be committed to the custody of the Attorney General for hospitalization and treatment.

On November 29, 2004, an evaluation by doctors at the Federal Medical Center, Carswell, Fort Worth, Texas, was submitted to the court. (Filing 21.) The report indicated that the defendant had been treated with various anti-psychotic and anti-depressant medications and that she was compliant with that regimen. (Id. at 4.) She was also placed in a competency restoration group and she participated appropriately. (Id. at 3.) The doctors diagnosed Pedroza as suffering from a schizoaffective disorder, depressive type and amphetamine dependence which was then controlled. (Id. at 6.)

Despite her mental illness, the report concluded that Pedroza was now competent to stand trial. In particular, the report concluded that:

> As a result of psychiatric treatment efforts and educational efforts over the course of the past four months, in my opinion Ms. Pedroza is currently competent to proceed. Psychiatric treatment has been effective in addressing Ms. Pedroza's hallucinations and delusions. She denies experiencing these symptoms currently, and recognizes psychiatric treatment has been responsible for her improvement. She has insight into the fact that she is mentally ill, and she expresses gratitude regarding the treatment she has received. Ms. Pedroza now appears capable of consulting with her attorney. Although she has some concerns that her attorney is Court-appointed and has not spent a great deal of time with her to this point, she also recognizes that her prior mental status made any consultation with her difficult. She has a positive impression of her attorney's intelligence and ability as a lawyer. Her primary concern is that "he goes so fast that sometimes I don't understand." However, Ms. Pedroza expresses no delusional ideas about her attorney, and states she feels she will be able to work with him to resolve her case. Ms. Pedroza may require more simplification, repetition, and clarification of legal issues than the typical defendant, but with this added assistance, she should have no difficulty in appropriate communicating and consulting with her attorney, and making rational decisions on the basis of that consultation. Ms. Pedroza now has a good factual understanding of the Courtroom proceedings as

a result of her participation in the competency restoration group. She understands the roles played by the various parties in the Courtroom, and has a good understanding of the process by which her charges will be resolved. She now demonstrates an ability to weigh the pros and cons of various decisions she will face as a defendant in Federal court, and to make rational decisions which are not based in any distortion of reality brought about by mental illness. Ms. Pedroza reports she has some difficulty remembering the details of the alleged offense. However, she is capable of reviewing any records and evidence which may exist in order to work on a defense strategy with her attorney.

(Id. at 5-6.)

On December 14, 2004, a superseding indictment was filed. (Filing 22.) It alleged that the defendant was involved in a conspiracy to distribute 500 grams or more of a mixture or substance containing methamphetamine from on or about June 1, 2003 through on or about December 16, 2003. (Id. (Count I)) It also charged a distribution of a mixture or substance containing methamphetamine on June 24, 2003. (Id. (Count II))

On December 23, 2004, Judge Piester found the defendant competent to stand trial and he entered a progression order setting the case for trial. (Filings 25 and 26.) Ms Pedroza notified the court through her counsel that she wished to enter a guilty plea on February 3, 2005. (Filing 27.)

On March 14, 2005 Judge Piester conducted a hearing on the defendant's guilty plea. (Filings 30 and 35.) The judge considered a very detailed 18-page petition to enter a guilty plea that Pedroza had signed with her lawyer's assistance. (Filing 31.) In common language, and among other things, the petition fully advised Pedroza of her rights and the fact that she faced life in prison if she pleaded guilty.

Judge Piester also considered the plea agreement that Pedroza had signed. (Filing 32.) Among other things, the plea agreement provided that the defendant would plead guilty to Count I, stipulated that the defendant would be held accountable for between 500 and 1.5 kilograms of methamphetamine, and provided that the defendant's offense level would be increased because she possessed a gun during her drug activities. From the government's perspective, the plea agreement promised, among other things, that the government would not file an information seeking to increase the defendant's statutory minimum sentence as a result of five prior drug convictions in Nebraska, Florida and Nevada. The government also agreed that the defendant could file a departure motion asserting diminished mental capacity.

The plea-taking proceeding before Judge Piester on March 14, 2005 was careful and deliberate. It lasted 30 minutes and the hearing is recorded in a 29-page transcript. (Filing 35.) Judge Piester fully complied with all of the requirements of Rule 11.

Specifically, the defendant told Judge Piester that she was taking her medications and that "I'm thinking clearly." (Id. at 5.) The judge also assured himself that defense counsel had thoroughly discussed the petition to enter a plea of guilty prior to the hearing. (Id. at 6.) Indeed, Pedroza represented that her counsel "explain[ed] the meaning of the questions" and she understood them. (Id.) At the conclusion of the hearing, both the prosecutor and the defense counsel advised Judge Piester that they were of the opinion that "the plea is knowing and intelligent, that it's voluntarily entered and that there's a factual basis for it." (Id. at 28.)

There was no question that Pedroza was guilty. The evidence against her was overwhelming and showed that she brokered methamphetamine sales, that the drug quantity fairly attributable to her exceeded 500 grams, and that she possessed a weapon while conducting her business. When pleading guilty, she admitted as much in the following exchange:

THE COURT [Magistrate Judge Piester]: Are you pleading guilty for any reason other than what we've talked about here today?

THE DEFENDANT: No, because I'm guilty.

THE COURT: Okay. Tell me about the factual basis.

MS. WAGNER [the prosecutor]: On June 24, 2003, Grand Island Police Department officials working with a cooperating individual under an agreement made an agreement through Ms. Pedroza to buy 1 pound of – of methamphetamine.

The cooperating individual went to Ms. Pedroza's apartment, met with her outside of the apartment. Officers saw her meet with the cooperating individual. They went into her apartment. There was audio – an audio recorder.[4]

At that point in time a third subject arrived at the residence, came in, provided the methamphetamine, which was then given to the undercover – the cooperating individual, who returned out and provided the methamphetamine to law enforcement. Lab tests revealed that this was 453.03 grams of methamphetamine at 9 percent purity.

A little over a month later, on July 26, 2003, Alice Pedroza was at the Sleep Inn motel in Hall County, Nebraska. She called 911, requesting assistance. And prior to law enforcement arriving, Ms. Pedroza put in a trash can, there in the lobby of the Sleep Inn motel, two plastic bags which contained a total of 88.42 grams of methamphetamine, a little over a gram of cocaine, and about 2 grams of a substance containing marijuana and methamphetamine.

She also left in the trash can a Phoenix Arms brand .22-caliber handgun, which was loaded with one round in the chamber.

---

[4]The government was able to maintain audio surveillance of the cooperating individual. See presentence report ¶ 20 (Government's version of the offense).

All these events occurred in the District of Nebraska.

THE COURT: Mr. Lamb, do you agree that if this case were to go to trial that information would be presented to the jury?

MR. LAMB [defense counsel]: I do, Your Honor.

THE COURT: Ms. Pedroza, do you agree?

THE DEFENDANT: Yes, I do, Your Honor.

THE COURT: Is that information true?

THE DEFENDANT: Yes.

THE COURT: All right. Was your involvement in this distribution at times after June 1, 2003, and before December 16, 2003?

THE DEFENDANT: They sound about right.

THE COURT: Okay. And – and was it in Nebraska? At least some of it?

THE DEFENDANT: Yeah.

THE COURT: And you knew that you were dealing with methamphetamine, I take it?

THE DEFENDANT: I wasn't dealing with it, but I had – I had people who gave me – who given – would give me some.

THE COURT: All right. And in turn, you gave it to somebody else; is that right?

THE DEFENDANT: Yes.

(Filing 35 at CM/ECF pages 22-24.)

Judge Piester issued a report and recommendation suggesting that I accept the plea. (Filing 33.) After de novo review of the transcript, I accepted the plea and found the defendant guilty. (Filing 36.)

A thorough presentence report was prepared. (Filing 42.) The probation officer set the total offense level at 34. (Id. ¶ 46.) This was determined by considering the drug quantity (500 grams to 1.5 kilograms), Pedroza's possession of a gun, the fact that Pedroza was a career offender, and Pedroza's acceptance of responsibility. Pedroza's criminal history was set at VI. (Id. ¶ 69.) She had 16 criminal history points, and she was also a career offender.

As a result of these calculations, Pedroza faced a very long prison sentence if the advisory Guidelines were followed. The range was between 262 to 327 months in prison. (Id. ¶ 136.) However, the probation officer suggested that I depart or vary from the Guidelines because of Pedroza's mental illness and because she had been victimized as a child. (Id. ¶ 154.)

Mr. Lamb, counsel for Pedroza, filed a motion for downward departure based upon diminished capacity. (Filing 37.) I issued tentative findings indicating that I would probably grant the departure motion and depart downward to 120 months in prison (the statutory minimum). (Filing 38.) I also directed the probation officer to procure and have available for use at the time sentencing all of Pedroza's medical records mentioned in the extensive presentence investigation report. (Id.) The government objected to my tentative findings. (Filing 39.) Among other things, the government asserted that Pedroza's problems stemmed in part from the voluntary use of drugs and that Pedroza, a career offender, required a long prison sentence to protect the public.

On June 3, 2005, I held an evidentiary hearing and sentenced Pedroza. During the hearing, Pedroza assured me that she was taking her medications. (Filing 46 at

29-30.) In fact, she affirmed that because of the "restoration" treatment "I do feel better." (Id. at 30.)

After considering seven medical reports (filing 41 (Exhibit List)), and over the government's objection, I departed downward because of the defendant's mental illness and sentenced Pedroza to 120 months in prison, the statutory minimum, and I imposed five years of supervised release to follow her release from prison. (Filing 44 (Judgment).) In particular, I wrote the following to explain my decision to depart so substantially:

> \* The Court grants defendant's motion for downward departure pursuant to 5K2.13 Diminished Capacity.
>
> \* The Court specifically finds that the defendant committed the offense under a significantly reduced mental capacity to wit: long standing schizophrenia. The Court also finds the significantly reduced medical capacity contributed substantially to the commission of the offense. For example, the Court notes (1) during the time frame of the relevant conduct, the defendant was hospitalized due to her illness and she exhibited extraordinarily bizarre behavior to the police; and (2) Medical Center for Federal Prisoners found the defendant to be incompetent to stand trial due her uncontrolled schizophrenia and she was only restored to competency after extensive treatment. The Court departs from the Guideline imprisonment range of 262-327 months to 120 months.
>
> (Filing 45 (Statement of Reasons).)

Neither the government nor Pedroza appealed. On April 10, 2006, Pedroza filed her § 2255 motion and sought the appointment of counsel. (Filings 50 and 51.)

## *II. ANALYSIS*

The record establishes that two competency hearings were held in this case. Thus, Pedroza's claim that she was incompetent is a "substantive" claim rather than a procedural claim. As discussed below, the law is slightly different for these two types of claims.

"Due process prohibits the trial and conviction of a defendant who is mentally incompetent." Vogt v. United States, 88 F.3d 587, 590 (8th Cir.1996) (citing Drope v. Missouri, 420 U.S. 162, 172 (1975)).[5] This prohibition is the "'substantive' competency principle." Id. "'[D]ue process [also] requires that a hearing be held whenever evidence raises a sufficient doubt about the mental competency of an accused to stand trial.'" Id. (quoting Griffin v. Lockhart, 935 F.2d 926, 929 (8th Cir.1991)) (footnote omitted). "[This 'procedural' competency] principle operates as a safeguard to ensure that the ['substantive' competency] principle is not violated." Id. (quoting Griffin, 935 F.2d at 929) (internal quotation marks omitted). The issues arising in procedural and substantive competency claims are similar but distinct; that is, "the issue in a substantive competency claim is whether the defendant was in fact competent to stand trial, but the issue in a procedural competency claim is whether the trial court should have conducted a competency hearing." Id. at 590-91.

Substantive due process prohibits a mentally incompetent defendant from being tried and convicted. Vogt, 88 F.3d at 590. In the context of a defendant's substantive due process claim that she was tried and convicted while mentally incompetent, the

---

[5]Pedroza did not appeal and thus the question of procedural default arises. Vogt held that the § 2255 movant who was claiming substantive incompetence should not be procedurally defaulted for failing to raise the claim on direct appeal. Id. at 590. While this holding may be in doubt, see Ryan v. Kenney, 125 F. Supp.2d 1149 1151 & n.3 (D. Neb. 2000), Vogt has not been overruled and I must therefore follow that decision.

-11-

defendant bears the burden of demonstrating by a preponderance of the evidence that she was incompetent at the time of trial.[6] Id. at 591.

"[N]ot every manifestation of mental illness demonstrates incompetence to stand trial . . . . Similarly, neither low intelligence, mental deficiency, nor bizarre, volatile, and irrational behavior can be equated with mental incompetence to stand trial."  Id. (quoting Medina v. Singletary, 59 F.3d 1095, 1107 (11th Cir.1995)) (quotation marks omitted).  Instead, the Eighth Circuit Court of Appeals has determined:

> Due process mandates that [the defendant is] entitled to consult with his lawyer with a reasonable degree of rational understanding and therefore be accorded a fair trial-not a perfect trial. Although [the defendant's] cognitive deficits may have placed additional responsibility on his counsel to ensure [the defendant's] understanding of the process, it certainly does not establish that he was incompetent to stand trial.

United States v. Robinson, 253 F.3d 1065, 1068 (8th Cir.2001).

Applying the foregoing legal standards, I decide that the files and records conclusively establish that Pedroza was competent.   Among other reasons, I am so persuaded because of the following undisputed facts:

* \*  According to doctors at a Federal Medical Center, Pedroza was restored to competency after extensive treatment using a mix of drug and group therapy.

---

[6] There is no reason to think that the standard is different for persons like Pedroza who are convicted as a the result of a guilty plea rather than a trial.

\*       Pedroza's past medical history reflected that when she was taking appropriate medications she was competent.

\*       At the time she entered her guilty plea, Pedroza represented to Judge Piester that she was taking her medications, that she was thinking clearly, and that her lawyer had thoroughly explained her options. Both the lawyer for the government and the lawyer for Pedroza certified that her guilty plea was knowing and intelligent.

\*       At the time of sentencing, Pedroza represented to me that she was taking her medications and felt better as a result of her treatment.

Accordingly,

IT IS ORDERED that the defendant's § 2255 motion (filing 50) is denied with prejudice in all respects, and a separate judgment shall be entered. The defendant's motion for the appointment of counsel (filing 51) is also denied.

April 26, 2006.                                    BY THE COURT:

                                                   s/ *Richard G. Kopf*
                                                   United States District Judge